**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHEMICAL EQUIPMENT LABS, INC. | : | |
| *Plaintiff*, | | |
| | | |
| v. | : | CIVIL ACTION |
| | | NO. 19-3441 |
| TRAVELERS PROPERTY CASUALTY | | |
| COMPANY OF AMERICA | : | |
| *Defendant*. | | |

**MEMORANDUM**

**JONES, II    J.**                                                    **March 31, 2022**

## I.    Introduction

Plaintiff Chemical Equipment Labs, Inc. ("CEL") commenced this action against Defendant Travelers Property Casualty Company of America ("Travelers") seeking insurance coverage pursuant to two policies: a Custom Cargo Policy (ZOC-51M1777A-14-ND) ("Cargo Policy") and Charter's Legal Liability Policy (ZOL-91M17422) ("Liability Policy"). Plaintiff's Complaint seeks declaratory judgment, and presents claims of breach of contract, as well as bad faith under 42 Pa.C.S. § 8371. Defendant asserted a crossclaim for declaratory judgment, contending there was no coverage under either policy, and seeking reimbursement for costs incurred while defending Plaintiff in a prior arbitration proceeding regarding the cargo at issue.

Presently before the court are the parties' cross Motions for Summary Judgment. For the reasons set forth herein, Plaintiff's Motion shall be denied in full, and Defendant's Motion shall be granted in part and denied in part.

## II.    Statement of Undisputed Facts

On April 30, 2014, Plaintiff entered into a Sales Agreement with Servicios Y Suministros Petroleros Y Gasiferos ("SSP&G") to purchase 300,000 Metric Tons of Venezuelan industrial

1

road salt (the "Sales Agreement"). (SUF ¶ 3; CSUF ¶ 5.)[1] The Sales Agreement required seller SSP&G to provide all export permits and documentation, and provided that payment was due upon presentation of shipping documents, including bills of lading, within three days after the sailing of the carrying vessel. (CSUF ¶ 5.)

On December 4, 2014, Plaintiff entered an agreement with Pioneer Navigation Ltd. ("Pioneer") to charter the vessel "GENCO OCEAN" to carry a shipment of industrial road salt from Araya, Venezuela to the United States. (SUF ¶ 8; CSUF ¶ 6.)  The GENCO OCEAN tendered her Notice of Readiness to load on December 11, 2014. (SUF ¶ 9.) Loading of Plaintiff's industrial salt commenced at approximately 2100 hours local time on December 11, 2014. (SUF ¶ 10.) At approximately 1120 hours on December 12, 2014, cargo operations were ordered halted by Venezuelan Customs. (SUF ¶ 11; CSUF ¶ 7.) At such time, approximately 11,000 tons of salt had already been loaded onto the vessel. (SUF ¶ 12.) On December 22, 2014, Venezuelan customs officials ordered the ship to discharge the industrial road salt back onto the pier. (SUF ¶ 13.) The GENCO OCEAN completed her discharge on December 29, 2014, and subsequently left the port empty. (SUF ¶ 14.) No bills of lading were issued to Plaintiff. (RCSUF ¶ 10.)

At the time of the underlying incident, Defendant had issued two policies to Plaintiff: a Liability Policy (ZOL-91M17422) and a Cargo Policy (ZOC-51M1777A-14-ND). (SUF ¶ 23.) Both policies were issued and countersigned in Pennsylvania. (SUF ¶ 24.)

---

[1] For purposes of the instant motion, this Court shall refer to Plaintiff's Statement of Undisputed Material Facts (ECF No. 27-2) as "SUF," Defendant's Counterstatement of Undisputed Material Facts (ECF No. 31-2) as "CSUF," and Plaintiff's Response to Defendant's Counterstatement (ECF No. 33-1) as "RCSUF."

The Liability Policy in effect at the time provides in relevant part:

CHARTERER'S LEGAL LIABILITY RIDER (ANNUAL BASIS)

1. In consideration of the stipulations hereinafter named and the payment of premiums as hereinafter provided, and subject to the limits of liability, exclusions, conditions and other terms of this policy, the Company agrees to indemnify the Insured to the extent of this policy's proportion as hereinafter stated of all sums which the Insured as charterer of vessels hereinafter described shall become obligated to pay as follows:

   (a) By reason of liabilities for physical loss or damage to the chartered vessel, including demurrage and/or detention liability directly resulting therefrom, imposed on the insured by reason of charter party provisions with respect to "safe berths", "safe ports" or the vessel lying "safely afloat" or liabilities for such loss or damage arising out of loading and/or unloading operations.

   (b) By reason of the liabilities imposed upon the insured as such charterer by law for property damage, loss of life or bodily injury other than that covered by Clause l(a).

   (c) By reason of legal costs and/or fees or expenses of counsel occasioned by the defense of any claim against the Insured for any liability or alleged liability of the Insured covered by this policy, provided that such fees and/or expenses are incurred with the prior written consent of this Company[.]

   * * * *

4. Notwithstanding anything to the contrary contained in this policy, it is hereby expressly understood and agreed that this insurance does not cover any liability:

   * * * *

   (d) For loss, damage or expense to cargo carried or to be carried on the vessel chartered, whether on board or not, or for general average, salvage, sue and labor costs or collision liability in respect to such cargo or applicable to freight or charter hire;

(SUF ¶ 25; RSUF Ex. 1 at 12.)

3

The Cargo Policy provides in relevant part:

**2.    Interest Clause**
For account of whom it may concern.

To cover all shipments lost or not lost in which the Assured has an insurable interest

                                * * * *

**5.    Basic Form Clause**
TOUCHING the adventures and perils which the said Travelers Property Casualty Company of America is contented to bear, and takes upon itself in this voyage . . . losses and misfortunes that have or shall have come to the hurt, detriment or damage of the said goods and merchandise or any part thereof.

                                * * * *

**6.    Insuring Conditions Clause**
Against all risks of physical loss or damage from any external cause irrespective of percentage but excluding those risks excepted by the "F.C. & S. and S.R. & C.C." warranties and the "Delay" clause in this policy, except to the extent that such risks are specifically covered elsewhere herein.

                                * * * *

**32.    Declarations, Premiums, Inspection of Records Clause**
A.    It is a condition of this insurance that the assured is bound to declare to Chamberlin & Reinhemer Insurers Inc. for transmission to this Company as soon as practicable after it is known to them (unless otherwise agreed) each and every shipment coming within the terms hereof, whether arrived or not, underwriters being bound to accept same up to but not exceeding the limit hereinafter agreed. It is also agreed that this insurance shall not be prejudiced by any unintentional delay or omission in reporting hereunder or any unintentional error in the amount or the description of the interest, vessel or voyage, if prompt notice be given to this Company as soon as said delay and/or omission and/or error becomes known to the Assured[.]

(SUF ¶ 26.)

The Cargo Policy further requires in pertinent part:

> B. Per Regularly Scheduled Commercial Airlines.
> Vessels excluded or not provided for by the above wording but covered by the terms of the policy are covered at rates to be arranged.
>
> Coverage on salt and calcium in bulk and similar merchandise in export packaging is insured subject to the insuring conditions as per Clause 6, Insuring Conditions in this policy .

| | **Rate Per $100 Insured Values** | |
| --- | --- | --- |
| | **Vessel** | **Air** |
| **From/To: Ports and/or Places in the World** | | |
| **To/From: Ports and/or Places in the World** | **$0.10** | **$0.10** |

> War, Strikes, Riots and Civil Commotions at the current additional rate of $0.02 this Company.
>
> Contingent Rate: 50% of Marine Rate Increased Value Rate: 125% of Marine Rate
>
> Duty Rate: 1/3 of Marine Rate

(RSUF Ex. 2 at 28.)

On December 23, 2015, Pioneer commenced arbitration before the Society of Maritime Arbitrations ("SMA") to a panel of three New York arbitrators. (SUF ¶ 18; CSUF ¶ 15.) Pioneer sought to recover $598,681.90 in damages, arising from Plaintiff's failure to perform under the December 4, 2014 charter agreement of the GENCO OCEAN. (SUF ¶ 18; CSUF ¶ 15.) Plaintiff timely provided notice of a potential liability claim by Pioneer to its insurance broker, who forwarded the report to Defendant. (SUF ¶ 27.) In documents submitted to Defendant by Plaintiff for the purpose of calculating insurance premiums, the GENCO OCEAN was one of five vessels identified and was designated as "Never Shipped." (SUF ¶ 31; CSUF ¶ 27.) The four other vessels, CMB MAE, SEA RACER, TORRENT, and TURQUOISE, were listed with a total declared cargo value of $1,953,500. (CSUF ¶¶ 25-26; RSCUF ¶ 26.) Both parties agree that Plaintiff paid insurance premiums for the other four voyages completed during the period of

October 3, 2014 to January 3, 2015. (SUF ¶ 32.) On June 9, 2015, Defendant issued a preliminary reservation of rights under the Liability Policy, advising Plaintiff that Pioneer's breach of charter agreement claim was not covered under the Liability Policy. (CSUF ¶ 14.) On August 20, 2015, Defendant confirmed that it would provide a defense for Plaintiff if arbitration commenced, while formally reserving its rights to later dispute whether Plaintiff was covered under the Liability Policy. (SUF ¶ 34; CSUF ¶ 14.)

Throughout the arbitration proceedings, Defendant defended Plaintiff under the terms and conditions of the Liability Policy. (SUF ¶ 19; CSUF ¶ 16.) The arbitration proceedings closed on August 17, 2018, and the SMA panel issued an award in favor of Pioneer on January 31, 2019. (SUF ¶ 20; CSUF ¶ 17.) The SMA panel held Plaintiff breached its contractual obligations and awarded Pioneer a total of $855,918.88: $598,721 for lost profit, $127,000 for attorney's fees, $96,197 for interest, and $34,000 for arbitral fees. (SUF ¶ 21; CSUF ¶ 17.)

On March 22, 2019, after the arbitration panel issued the final award against Plaintiff, Defendant notified Plaintiff it was declining coverage under the Liability Policy for all damages set forth in the final award. (SUF ¶ 36; CSUF ¶ 19.) Defendant also notified Plaintiff it would continue to pay for reasonable defense costs until judgment was rendered on the final award. (SUF ¶ 36.)  On April 16, 2019 and April 17, 2019, Plaintiff's counsel wrote letters to Defendant asserting coverage under the terms of the Cargo Policy. (SUF ¶ 37-38; CSUF ¶ 20.) On April 23, 2019, Defendant sent a response letter to Plaintiff denying coverage under the Cargo Policy. (SUF ¶ 39; CSUF ¶ 22.)

**III.    Standard of Review**

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(a).  "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).  Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).  "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted).  Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  To that end, however, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C*., 560 F.3d 156, 161 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)) (internal quotation marks omitted). Instead, an affiant must set forth specific facts that reveal a genuine issue of material fact. *Id*.

A court must "view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003). However, if a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment. *See* Fed. R. Civ. P. 56(e)(2)-(3); *see also Judge C. Darnell Jones II Chambers Policies and Procedures* (rev'd Dec. 2, 2016), http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf  ("The Court will not consider any description of a fact that is not supported by citation to the record. Statements of Material Facts in support of or in opposition to a motion for summary judgment must include specific and not general references to the parts of the record that support each of the statements, such as the title of or numbered reference to a document, the name of a deponent and the page(s) of the deponent's deposition, or the identity of an affidavit or declaration and the specific paragraph relied upon. Pinpoint citations are required.").

IV.    **Discussion**[2]

    A.    **Declaratory Judgment**

        1.    **Plaintiff's Coverage Under Defendant's Insurance Policies**

In its Complaint, Plaintiff asserts coverage under both insurance policies issued by the Defendant. (Pl.'s Compl. ¶ 44.) Defendant denies that either policy provides coverage because the liability policy only covers the vessel and Plaintiff failed to pay the premium owed on the cargo at issue. (Def.'s Mot. Summ. J. 11-13.)[3]

This Court has admiralty jurisdiction pursuant to 28 U.S.C. §1333 because the claims at issue relate to two marine insurance contracts.[4] *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 132 (3d Cir. 2002). Courts generally apply state law when interpreting the language of marine insurance contracts. *See Calhoun v. Yamaha Motor Corp.*, 40 F.3d 622, 627 (3d Cir. 1994). A court exercising admiralty jurisdiction applies federal choice-of-law principles, wherein the court analyzes which state has the most significant relationship to the incident and the dominant interest in having its law applied. *Id.* Absent a choice of law clause, the governing law is typically the forum where the contract was executed and performed. *Centennial Ins. Co. v. Lithotech Sales, LLC*, 29 F. App'x 835, 837 (3d Cir. 2002) (citing *Valdesa Compania Naviera, S. A. v. Frota Nacional De Petroleiros*, 348 F.2d 33, 38 (3d Cir. 1965)).

---

[2] While there are competing motions for summary judgment, the primary basis for each motion is whether the plain language of the two policies at issue require indemnity. The motions will, therefore, be addressed in tandem unless otherwise noted.

[3] Defendant provides alternative arguments regarding why the cargo at issue was not covered under the cargo policy. (Def.'s Mot. Summ. J. 14-15.) However, for the reasons that follow, said arguments are rendered moot.

[4] The instant case was removed from the Delaware County Court of Common Pleas to federal court in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1332. (Def.'s Notice of Removal, ECF No. 1.)

In this case, neither insurance policy contains an express choice of law provision. However, both parties agree that the Liability Policy and Cargo Policy were issued and countersigned in Pennsylvania. (SUF ¶ 24.) Additionally, the Liability Policy provides that the statute of limitations for bringing any action or proceeding against the Defendant are prescribed by the laws of Pennsylvania. (Pl.'s Mot. Summ. J. Ex. J at 16, ¶ 9.) This Court concludes—and the parties do not dispute—that the Liability and Cargo Policies shall be interpreted under Pennsylvania law.

Under Pennsylvania law, "interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (citations omitted). If the policy language is clear and unambiguous, the court must give effect to that language. *Id.* However, if the language is "reasonably susceptible of different constructions and capable of being understood in more than one sense[,]" it should be "construed in favor of the insured and against the insurer, the drafter of the agreement." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (applying Pennsylvania law) (citations omitted). The court will now examine whether coverage existed under each of the two applicable insurance policies.

### a.       The Liability Policy (ZOL-91M17422)

Although Plaintiff asserts coverage under the Liability Policy in its Complaint, it presented no subsequent argument on this issue in its Motion for Summary Judgment. Defendant, however, continues to argue that the Liability Policy is not applicable to Plaintiff's claim because there was no vessel damage to trigger coverage. (Def.'s Mot. Summ. J. 11-12.)

Under the Liability Policy, Defendant agrees to indemnify Plaintiff for liabilities incurred in three specific circumstances: (a) "physical loss or damage to the chartered vessel," (b)

10

"property damage, loss of life or bodily injury," and (c) "legal costs and/or fees or expenses of counsel occasioned by the defense of any claim . . . covered by this policy." (Pl.'s Mot. Summ. J. Ex. J at 13, ¶ 1.) The undisputed facts establish that none of the events that would obligate Defendant to indemnify Plaintiff occurred in this matter. While in Venezuela, Plaintiff's industrial salt was loaded onto the GENCO OCEAN and was subsequently offloaded back onto the pier. (SUF ¶¶ 10,13.)  The GENCO OCEAN then left port safely without Plaintiff's cargo. (SUF ¶ 14.) Because Plaintiff cannot establish damage to the vessel or any other property damage, it cannot succeed on its claim for coverage under the Liability Policy.

Furthermore, Clause 4(d) of the Liability Policy explicitly excludes from coverage "loss, damage or expense *to cargo* carried or to be carried on the vessel chartered, whether on board or not." (Pl.'s Mot. Summ. J. Ex. J at ¶ 4.) (emphasis added.) Plaintiff is seeking indemnity for an arbitration award granted to Pioneer arising from the failed shipment of industrial salt on the GENCO OCEAN. (SUF ¶ 18.) Because the arbitration proceedings arose from Plaintiff's obligations relating to a loss of cargo, Clause 4(d) makes it clear that Defendant is not obligated to provide coverage under the Liability Policy.

### b.    The Cargo Policy (ZOC-51M1777A-14-ND)

Plaintiff asserts that the Cargo Policy is an "all-risk policy," meaning the insured faces a lower burden to prove coverage than the high burden faced by insurer to disprove coverage. (Pl.'s Mot. Summ. J. 9-10.) Defendant agrees with Plaintiff's assessment of the burdens of proof, but argues Plaintiff fails to establish even a *prima facie* case for coverage under the Cargo Policy. (Def.'s Mot. Summ. J. 13.) Specifically, Defendant asserts there is no coverage because (i) Plaintiff failed to pay the premiums; (ii) Plaintiff did not have an insurable interest; (iii) there was no "physical loss or damage," as required under the policy; and, (iv) coverage was excluded

under the F. C. & S. Clause. (Pl.'s Mot. Summ. J. 10-11.) Inasmuch as this Court finds Plaintiff failed to pay the premium on this cargo, Defendant's remaining three arguments are rendered moot.

Two conditions of the Cargo Policy are material to the resolution of whether coverage existed. First, Plaintiff was required to declare "each and every shipment coming within the terms hereof," as a condition of coverage. (Pl.'s Mot. Summ. J. Ex. K at 17, ¶ 32A.)[5] Second, Plaintiff was required to make premium payments at a rate of $0.10 per $100 of declared cargo value. (Pl.'s Mot. Summ. J. Ex. K at 19.)

Both parties agree that Plaintiff timely notified Defendant about the non-shipment of cargo aboard the GENCO OCEAN. (SUF ¶ 27.) The issue of payment, however, is less clear. In documents submitted to Defendant for purposes of calculating Cargo Policy insurance premiums from 10/03/2014 to 01/03/2015, Plaintiff reported five voyages, including the GENCO OCEAN. (SUF ¶ 31; CSUF ¶ 26.)  Plaintiff did not declare a value for the cargo associated with the GENCO OCEAN and instead designated it as "Never Shipped." (SUF ¶¶ 31.) Plaintiff declared that the other four voyages had a total combined value of $1,953,500. (CSUF ¶ 26.) Plaintiff timely paid the resulting $1,953.50 premium. (SUF ¶ 32.)

The parties disagree about the effect of Plaintiff's listing of the GENCO OCEAN voyage without a declared value, and without a corresponding premium payment. Defendant asserts that Plaintiff's nonpayment bars coverage for losses associated with the GENCO OCEAN voyage. (Def.'s Mot. Summ. J. 9.) Conversely, Plaintiff argues it paid all premiums required to obtain full coverage for cargo aboard the five reported voyages, including the salt loaded on and off the

---

[5] The policy also provided that Plaintiff would "not be prejudiced by any unintentional delay . . . if prompt notice be given" to Defendant. (Pl.'s Mot. Summ. J. Ex. K at 17, ¶ 32A.)

GENCO OCEAN. (Pl. Mot. Summ. J. 17.) Specifically, Plaintiff argues it properly identified the GENCO OCEAN as a voyage for which it was seeking coverage. (Pl. Mot. Summ. J. 17-18.)[6] Plaintiff's expert, Mr. Anthony Pruzinsky, opined that Plaintiff's conduct was sufficient for coverage and concluded that if Defendant required additional premiums to extend coverage, it would have invoiced for such. (Pl. Mot. Summ. J. 18.)

Under the plain meaning of the Cargo Policy, Plaintiff's failure to declare a value for the cargo of salt loaded onto the GENCO OCEAN, and failure to pay a corresponding premium, precludes coverage for resulting losses. In order to succeed, Plaintiff must provide extrinsic evidence which would permit a factfinder to reasonably conclude otherwise. Under Pennsylvania law, written contracts may be modified by subsequent oral agreements. *See First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 280-81 (3d Cir. 1987) (holding the district court erred in granting summary judgment based on the written provisions of an insurance policy where there was substantial evidence of verbal modification to the premium payment provision). In *First National*, the district court granted summary judgment in favor of the insured because the insurance policy stated that premium payments were due monthly. *Id.* at 280. The Third Circuit reversed the district court  because the insurer presented uncontroverted evidence of a course of conduct proving the payment schedule had been changed to semi-annually. *Id.* at 280-81.

Here, Plaintiff offers no evidence that it paid a premium for the GENCO cargo or that Defendant assented to any modifications to the premium agreed to within the four corners of the

---

[6] Plaintiff asserts that payment of premiums on the 4 other voyages grants them coverage for all 5 vessels (including GENCO) that took off during that premium period. (Pl. Mot. Summ. J. 17-18.) To the extent Plaintiff argues it could not pay what Defendant did not bill, this Court finds it is clear from the Policy that Plaintiff was responsible for submitting a value for the cargo.

Cargo Policy. Although Plaintiff's expert offered one opinion about how an insurer might handle a similar situation, Plaintiff presents no evidence that this Defendant's specific conduct could be interpreted as having agreed to extend coverage, despite nonpayment of the full required premium. Therefore, there exists no genuine issue of material fact, and Defendant is entitled to a declaration of no coverage as a matter of law.

### B.    Breach of Insurance Contracts

Count II of Plaintiff's Complaint alleges Defendant breached its two insurance contracts by refusing to provide coverage or indemnify the Plaintiff. (Pl.'s Compl. ¶ 47.) In Pennsylvania, a breach of contract claim requires that the plaintiff prove "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. 2005). In light of the court's holding regarding declaratory judgment above, Plaintiff's breach of contract claim must also fail. Because Defendant had no duty to perform under either the Liability or Cargo Policies, Defendant cannot be found liable for breaching either insurance contract.

### C.    Bad Faith Under 42 Pa.C.S. § 8371

Count III of Plaintiff's Complaint alleges Defendant exhibited bad faith in its handling of Plaintiff's claim. (Pl.'s Mot. Summ. J. 18.)  Under Pennsylvania law, a court that finds an insurer has acted in bad faith may award interest, punitive damages, and court costs and attorney fees. 42 Pa.C.S.A. § 8371. In order to recover in a bad faith action, "the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017) (adopting the test first articulated by the Superior Court in *Terletsky v. Prudential Property & Cas. Ins. Co.*,

14

649 A.2d 680 (Pa. Super. 1994)). Further, although proof of the insurer's subjective motive of self-interest or ill-will is probative, it is not a necessary to succeed on a bad faith claim. *Id.*

Because this Court has determined Plaintiff is not entitled to insurance coverage as a matter of law, Plaintiff's claim for bad faith necessarily fails. Inasmuch as Defendant had a "reasonable basis" for denying coverage, Plaintiff's motion for summary judgment on its bad faith claims must be denied.

### D.  Reimbursement of Defendant's Costs Defending Plaintiff in Arbitration

Defendant seeks reimbursement of costs incurred in defending Plaintiff in arbitration proceedings on the basis that it had no duty to defend. (Def.'s Mot. Summ. J. 16.) However, Plaintiff claims Defendant has no basis to recover costs absent an express provision in the insurance contract. (Pl.'s Mot. Summ. J. 22.)

Under the Liability Policy, Defendant agreed to indemnify Plaintiff:

> By reason of legal costs and/or fees or expenses of counsel occasioned by the defense of any claim against the Insured for any liability or alleged liability of the Insured covered by this policy, provided that such fees and/or expenses are incurred with the prior written consent of this Company.

(Pl.'s Mot. Summ. J. Ex. J at 13, ¶ 1(c)).

Following the failed GENCO OCEAN voyage, Plaintiff timely notified Defendant of a potential claim by Pioneer. (SUF ¶ 27.) In response, Defendant issued a preliminary reservation of rights under the Liability Policy, advising Plaintiff that Pioneer's breach of charter party claim was not covered under the Liability Policy. (CSUF ¶ 14.) Defendant subsequently confirmed that it would provide a defense for Plaintiff if arbitration commenced, while formally reserving its rights to later dispute coverage. (SUF ¶ 34; CSUF ¶ 14.) Defendant defended Plaintiff in the arbitration proceedings. (SUF ¶ 19; CSUF ¶ 16.) Following the arbitration panel's decision

against Plaintiff, Defendant denied coverage of the awarded damages, but also notified Plaintiff it would continue to pay for reasonable defense costs until judgment was rendered. (SUF ¶ 36.)

Under Pennsylvania law,

> [a]n insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy. As long as the complaint "might or might not" fall within the policy's coverage, the insurance company is obliged to defend. Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) (internal citations omitted).

This duty is not limited to meritorious actions. *Id.* Reimbursement of defense costs requires an express provision in the written insurance contract. See *Id.* at 546 ("We therefore hold that an insurer may not obtain reimbursement of defense costs for a claim for which a court later determines there was no duty to defend, even where the insurer attempted to claim a right to reimbursement in a series of reservation of rights letters.").

Here, the undisputed facts make it clear that Defendant is not entitled to reimbursement of its defense costs. Plaintiff made Defendant aware of a claim by Pioneer that plausibly fell within the scope of the Liability Policy. (SUF ¶ 27.) Defendant agreed to cover defense costs while repeatedly reserving its rights to later dispute coverage. (CSUF ¶ 14.) While this Court has subsequently found that Defendant had no duty to defend under the Liability Policy, the absence of an express reimbursement provision precludes Defendant from recovering those costs.

**V.**     **Conclusion**

For the reasons set forth herein, Plaintiff's Motion shall be denied in full, and

Defendant's Motion shall be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II      J.